[No. B126355. Second Dist., Div. Four. May 1, 2000.]

ELLEN T. JONES, Plaintiff and Appellant, v.
PAUL F. MOORE, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Discussion, part III.

**COUNSEL**

Law Offices of Stephen Scott King, Stephen Scott King and Wendy Rossi for Plaintiff and Appellant.

Ward, Kroll & Jampol, Alan R. Jampol and Wendy L. Wilcox for Defendant and Respondent.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

Plaintiff Ellen T. Jones appeals from a judgment entered on a jury verdict in favor of defendant Paul F. Moore in her action for legal malpractice arising out of defendant's legal representation in an underlying marital dissolution action. Plaintiff contends on appeal that the trial court erred in excluding at trial certain testimony of her expert witness on the applicable standard of care, and in permitting defendant's expert witness to testify as to matters beyond the scope of defendant's expert witness declaration. Plaintiff also contends that there was instructional error requiring reversal of the judgment.

We find no error as to any of the contentions raised by plaintiff and therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff retained defendant in 1987 to represent her in marital dissolution proceedings. The property settlement issues were hotly contended. The husband, Kevin Jones, held substantial separate property, including stock in the construction business and related entities founded by his father, and interests in various limited partnerships which held real estate assets. Plaintiff and Kevin had difficulty reaching agreement on the property issues and in March 1990 were on the verge of going to trial. On the day trial was scheduled to begin, a settlement was reached. The settlement was read into the record in court. In December 1990, the settlement agreement was reduced to a judgment and became known as the "further judgment on reserved issues," hereafter referred to as the further judgment.

The pertinent aspects of the further judgment were as follows: Kevin would give to plaintiff an "equalizing promissory note" for $500,000, payable on or before April 1, 2000. The note was secured by an interest Kevin held in a limited partnership known as Westwood Place, which owned a medical office building. Kevin's interest at that time was worth about $625,000. The note provided for no interest or periodic payments; instead

Kevin was to make monthly spousal support payments of $4,350 until the note was paid in full. Kevin made an immediate payment of $62,500, payable jointly to plaintiff and defendant, which was intended to be used to pay a portion of defendant's fees and costs.

In or about 1994 plaintiff began to question whether the value of the Westwood Place partnership had declined. Defendant took Kevin's deposition, which revealed that the Westwood Place partnership had filed for bankruptcy in 1992 and Kevin's interest in the partnership was worthless. Plaintiff wanted defendant to obtain substitute security for the note. Kevin had equity in a mobilehome, as well as interest in two pension funds. Kevin eventually agreed to provide substitute security for the note. In November 1994 the agreement to provide substitute security was reduced to a stipulated order, which left to the agreement of the parties the specific security Kevin would provide. If the parties could not agree, the court was to designate the security to be used.

Kevin's counsel advised defendant that by their terms the pension funds could not be used as security for the note, and the administrator would not permit their use for that purpose. Before defendant secured a transfer to plaintiff of Kevin's interest in his mobilehome, Kevin sold the mobilehome and used the proceeds, about $50,000, to pay income taxes. Kevin also had an interest in a limited partnership known as Held/Jones III. The Held/Jones III partnership agreement required the consent of the general partner in order for Kevin to convey any of his interest in the partnership, and the general partner refused to consent.

In 1994, Kevin terminated his employment with The JCM Group, a Jones family business, and started his own construction company in Southeast Asia. Kevin sold his stock in JCM, valued at about $490,000, and that stock was therefore no longer available to be used as security for the note. In December 1995, Kevin received $186,123 from the sale of the JCM stock, and the rest was paid back into the company to pay off loans taken by Kevin.

In May 1996, defendant discovered and told plaintiff that Kevin had cashed in his pension accounts, sold his stock in JCM, and moved to Southeast Asia to begin his own construction business. Plaintiff discharged defendant and retained a new attorney.

Kevin stopped making spousal support payments in February 1997 and told plaintiff he would thereafter pay only child support.

Plaintiff filed the present action for malpractice in April 1997. In her complaint, plaintiff noted that defendant continued to represent her until May 1996. She alleged that "[d]efendants, and each of them, failed to exercise reasonable care and skill in performing legal services for Plaintiff, and negligently and carelessly committed, inter alia, the following acts and omissions: [¶] (a) Failed to have the community property and quasi-community property interests possessed by Plaintiff and her former husband accurately valued and appraised. [¶] (b) Failed to obtain adequate security for Plaintiff regarding the $500,000 equalizing promissory note described in [the further judgment]. [¶] (c) Failed to obtain adequate security regarding the non-modifiable/non-terminable spousal support payable to Plaintiff by her former spouse as described in [the further judgment]. [¶] (d) Failed to properly secure Plaintiff's fractional interests in the business/investment properties awarded to Plaintiff in [the further judgment]. [¶] (e) Failed to have [the further judgment], equalizing promissory note, and attendant security devises [*sic*] prepared and in full force and effect in a timely fashion."

The matter proceeded to a jury trial in July 1998 and resulted in a judgment on special verdict in favor of defendant. The jury answered the first question on the special verdict form, "Was Defendant negligent?" in the negative and, as appropriate, signed and returned the special verdict form without addressing issues of causation and damages.

Plaintiff's motion for new trial was denied by the trial court, and this appeal followed.

### DISCUSSION

### I. *Exclusion of Connolly Oyler's Testimony*

Plaintiff contends on appeal that the trial court committed reversible error when it did not permit her expert witness on the standard of care issue, Attorney Connolly Oyler, to testify as to his opinions regarding defendant's conduct after the further judgment was entered in 1990. She contends she fully complied with Code of Civil Procedure section 2034, which governs expert witness designations, by filing an expert witness declaration for Oyler which was sufficiently broad to encompass the testimony plaintiff wished to produce at trial regarding defendant's post judgment conduct.[1]

Defendant contends that Oyler's testimony was properly excluded because he was asked at deposition to state with specificity all of the opinions he

---

[1]Code of Civil Procedure section 2034 provides in relevant part:

intended to give at trial with regard to defendant's failure to meet the applicable standard of care. He did so, and affirmatively stated that those were the only opinions he intended to express at trial, assuring defense counsel that if he formed any other opinions before trial he would notify defendant to permit him to exercise his discovery rights. The opinions Oyler expressed during his deposition as to defendant's failure to meet the standard of care related only to defendant's conduct up to the time the further judgment was entered. As we will explain, we agree with defendant's contentions and conclude the trial court did not err in excluding Oyler's testimony.

## A. *Plaintiff's Expert Witness Declaration*

Plaintiff served on defendant her designation of experts and expert witness declarations, identifying Connolly Oyler as an expert who would "testify as to the handling of the underlying dissolution of marriage proceedings including, but not limited to: the standard of care for attorneys practicing in the field of family law and Defendant's failure to meet that standard in the underlying dissolution of marriage proceedings; his opinions concerning settlement and the stipulated '[further judgment on reserved issues]'; the failure to handle the dissolution proceedings for Plaintiff in a manner which would have resulted in a fair and secure division of community property; the lack of security for the $500,000.00 'equalizing' promissory note; the reasons Defendant's conduct fell below the standard of care for attorneys

---

"(a) After the setting of the initial trial date for the action, any party may obtain discovery by demanding that all parties simultaneously exchange information concerning each other's expert trial witnesses to the following extent:

"(1) Any party may demand a mutual and simultaneous exchange by all parties of a list containing the name and address of any natural person, including one who is a party, whose oral or deposition testimony in the form of an expert opinion any party expects to offer in evidence at the trial.

"(2) If any expert designated by a party under paragraph (1) . . . has been retained by a party for the purpose of forming and expressing an opinion in anticipation of the litigation or in preparation for the trial of the action, the designation of that witness shall include or be accompanied by an expert witness declaration under paragraph (2) of subdivision (f). [¶] . . . [¶]

"(f) All parties who have appeared in the action shall exchange information concerning expert witnesses in writing on or before the date of exchange specified in the demand. . . . [¶] . . . [¶]

"(2) If any witness on the list is an expert as described in paragraph (2) of subdivision (a), the exchange shall also include or be accompanied by an expert witness declaration . . . . This declaration shall be under penalty of perjury and shall contain: [¶] . . . [¶]

"(B) A brief narrative statement of the general substance of the testimony that the expert is expected to give. [¶] . . . [¶]

"(D) A representation that the expert will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that the expert is expected to give at trial."

All further statutory references are to the Code of Civil Procedure.

handling such dissolution actions and the causation or effect of such handling, through Defendant's actions and/or omissions, on the losses and expenses [plaintiff] incurred and/or became subject to pay." Plaintiff's counsel declared that Oyler "will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that he expects to give at trial."

B. *Oyler's Deposition Testimony*

Defendant took Oyler's deposition in June 1998, the month before the trial. Defense counsel asked Oyler to state "everything that you think that [defendant] did that was not up to the standard of care of attorneys in the position he was in." Plaintiff's counsel objected to the question as asking for a narrative, but did not instruct Oyler not to answer. Oyler answered as follows: "In connection with the note, if there was security in the note, it should have been prepared forthwith, immediately, contemporaneously with the preparation of the note. Secondly . . . [t]he security for the note should have been every single asset which the husband received under and pursuant to the further judgment on reserved issues. Thirdly, it fell beneath the standard of care not to have interest on the note. . . . Fourthly, the note should have provided for installment payments. And I suppose, if I look in my file and some of my notes, I might come across others that aren't coming to mind in this instance."

Defense counsel asked, "Any other areas in which you believe [defendant] fell below the standard of care in representing [plaintiff]?" Oyler replied, "Not that I'm prepared to testify to at this time." Counsel inquired whether Oyler anticipated doing any further work on the matter to arrive at any other opinions. Oyler said, "No, but if I do, you will be notified well in advance, so as to be able to properly exercise your discovery rights."

Oyler's file was returned to him shortly thereafter. After questioning Oyler about the four ways Oyler had enumerated that defendant fell below the standard of care, defense counsel asked Oyler whether he had reviewed his file to see if there was anything else upon which he planned to opine at trial. Oyler said he had reviewed the file, and "yes, there's restraining orders which could have been obtained to prevent removal of moneys from pension, profit sharing, retirement, or other accounts until such time as the note was paid. Secondly, there's an issue as to the $62,500 initial installment of the equalizing payment which should have really been applied basically to [defendant's] fees instead of to the client. But those are the only other issues going through the file." On the issue of restraining orders, Oyler later elaborated: "There should have been in the further judgment restraining

orders preventing a transfer of any assets of any nature whatsoever pending a payment on this note, particularly with respect to the retirement plans. They should have been joined, made parties to the proceeding, which would have prevented withdrawals."

In summary, Oyler's opinions related only to defendant's conduct with regard to the settlement and further judgment entered in 1990. None of Oyler's opinions related to defendant's later conduct in failing to obtain substitute security after the Westwood Place partnership declared bankruptcy. Oyler specifically disavowed holding any other opinions than those he had expressed, and said if he formed any other opinions he would notify defendant.

## C.  Oyler's Trial Testimony

At trial, Oyler testified to the same opinions as those he expressed in his deposition, i.e., the ways in which defendant's conduct relating to the settlement agreement and further judgment fell below the applicable standard of care. Plaintiff's counsel asked if Oyler had an opinion as to whether or not it fell below the standard of care for defendant to fail to obtain additional security after 1994, when Kevin stipulated to provide substitute security. Defense counsel objected—as he had done several times previously, with mixed results—that the question called for an opinion outside the scope of Oyler's deposition testimony. An unreported sidebar conference was held, after which the question regarding defendant's post-1994 conduct was not renewed.[2] While the basis for the trial court's ruling to exclude the testimony is unclear from the record, it is clear that plaintiff was not permitted to elicit the testimony and, in any event, we evaluate on appeal whether the exclusionary ruling was correct on any ground.

## D.  Exclusion of Additional Opinions Was Appropriate

■   While plaintiff's expert witness declaration regarding Oyler arguably was broad enough to encompass his testifying regarding ways in which defendant breached the standard of care after the further judgment was entered, in his deposition he testified as to certain specific opinions, said those were his only opinions, and if he had others he would notify defense counsel. Under these circumstances, exclusion of testimony going beyond

---

[2]The trial judge stated that all speaking objections were to be made at the sidebar in his court. The trial court gave the parties the opportunity during breaks to state for the record the substance of their objections. Plaintiff apparently did not object to this procedure; she does not provide us with any citation to the record where she objected.

the opinions he expressed during his deposition was justified. The purpose of section 2034 is to permit parties to adequately prepare to meet the opposing expert opinions that will be offered at trial. " '[T]he need for pretrial discovery is greater with respect to expert witnesses than it is for ordinary fact witnesses [because] . . . . [¶] . . . the other parties must prepare to cope with witnesses possessed of specialized knowledge in some scientific or technical field. They must gear up to cross-examine them effectively, and they must marshal the evidence to rebut their opinions.' (1 Hogan & Weber, Cal. Civil Discovery (1997) Expert Witness Disclosure, § 10.1, p. 525.)" (*Bonds v. Roy* (1999) 20 Cal.4th 140, 147 [83 Cal.Rptr.2d 289, 973 P.2d 66].) When an expert deponent testifies as to specific opinions and affirmatively states those are the only opinions he intends to offer at trial, it would be grossly unfair and prejudicial to permit the expert to offer additional opinions at trial.

Section 2034, subdivision (j)(4) provides that on objection of any party who has complied with the requirement of serving expert witness declarations, a trial court must exclude from evidence the expert opinion of any witness offered by a party who has unreasonably failed to make that expert available for a deposition. While that is not precisely the situation here, it is similar in that Oyler was in effect not made available for deposition as to the further opinions he offered at trial—opinions which during deposition he assured defense counsel he did not have. He promised to notify defendant if he later formulated such opinions but did not do so.

We also note that section 2034, subdivision (k) provides a mechanism by which a party can seek to "amend [its] expert witness declaration with respect to the general substance of the testimony that an expert previously designated is expected to give," provided time remains for the deposition of the expert to be taken. Here, plaintiff gave no warning that Oyler was going to be asked at trial to state opinions different from those he expressed at deposition.

The situation here is not precisely the same as that in *Bonds v. Roy, supra,* 20 Cal.4th 140, in which the Supreme Court upheld the trial court's ruling to preclude an expert from testifying at trial as to the standard of care of a physician defendant because the plaintiff's expert declaration said the expert would address only the issue of damages.[3] The case before us does not turn on the adequacy of the expert witness declaration, but rather on a party's right to rely on the other party's expert's express representation that the

---

[3]We note, however, that in *Bonds* the expert testified at his deposition that he did not expect to offer any opinions about the standard of care issues in the case. (20 Cal.4th at p. 143.)

opinions expressed during an expert deposition are the only ones that need be met at trial. *Bonds* does however provide support for the result we reach because it recognizes that an important goal of section 2034 is to enable parties to properly prepare for trial, and "[a]llowing new and unexpected testimony for the first time at trial" is contrary to that purpose. (See 20 Cal.4th at p. 148.)

## II. *Permitting Simpson to Testify Regarding Kevin's Pensions*

■ Plaintiff contends that Thomas L. Simpson, defendant's designated "expert in the area of family law," should not have been permitted to testify at trial "as a pension/retirement plan expert." Defendant's expert witness declaration stated that Simpson "will testify regarding the standard of care of a family law attorney in marital dissolution matters, whether defendant's representation of plaintiff was within the applicable standard of care, and potential remedial actions available to plaintiff." Plaintiff contends Simpson should not have been permitted to testify, over objection, that Kevin's pension plan could not be used as security for the equalizing promissory note, because that testimony went beyond the general substance described in the expert witness declaration. We disagree.

The expert witness declaration for Simpson was sufficiently broad to permit him to opine that defendant did not fall below the standard of care of family law attorneys by failing to join Kevin's pension plan as a party or use the plan as security for the note, since by its terms the pension plan could not be used as security. Whether the pension plan should be joined or was available as security was within the general ambit of whether defendant breached the standard of care. Apparently Simpson was not asked during his deposition about the pension plan and was not asked to affirmatively state that his opinions at trial would be limited to those expressed during his deposition. This is in distinct contrast to the situation discussed above regarding Oyler's testimony. Under these circumstances, the trial court did not abuse its discretion in permitting Simpson to testify regarding the pension plan.

## III. *Alleged Instructional Error**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 557.

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.

A petition for a rehearing was denied May 26, 2000, and appellant's petition for review by the Supreme Court was denied August 9, 2000.