Filed 1/14/14  Minkin v. State Farm Gen. Ins. Co. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **RONALD D. MINKIN,** | |
| **Plaintiff and Appellant,** | **A136421** |
| v. | |
| **STATE FARM GENERAL INSURANCE COMPANY et al.,** | **(San Mateo County Super. Ct. No. CIV481319)** |
| **Defendants and Respondents.** | |

Plaintiff Ronald D. Minkin (plaintiff) appeals from a judgment entered in favor of defendants State Farm General Insurance Company (State Farm) and Britannia, Inc. (Britannia) after the trial court granted a motion in limine to exclude the testimony of plaintiff's designated construction repair expert based on a violation of the discovery statutes.  Plaintiff argues the court's ruling amounted to an unauthorized summary judgment in favor of the defense and was an unreasonable use of a "terminating sanction."  We affirm.

BACKGROUND[1]

Plaintiff purchased a custom home in Burlingame in 2000, which was insured at all relevant times by a State Farm homeowners insurance policy.  In May 2007, plaintiff

---

[1] Because this case was dismissed before trial, the facts are taken from the hearing on the defense motion in limine to exclude plaintiff's expert, as well as documents and exhibits in the superior court file.

noticed water dripping from the family room/kitchen ceiling after a rainstorm. In October 2007, he reported the water intrusion to State Farm. A visual inspection conducted by a State Farm investigator revealed staining and warping of window molding, wood flooring and sheetrock in the family room/kitchen and in the library below. Plaintiff secured a repair estimate totaling $119,000 from Diodati Construction, which identified the source of the leak as defects or deterioration in the tiling of the patio roof deck above the kitchen/living room.

State Farm claim representative Letitia Wong agreed the interior water damage was a covered loss under the policy, but estimated the cost of repair to be only $18,454. The large discrepancy between the two figures arises largely from a disagreement as to whether it was necessary to completely redo the interior of the paneled library. Subtracting plaintiff's $5,000 deductible, Wong sent plaintiff a check for $13,455 on February 19, 2008, and closed the file.

Unsatisfied with the amount paid by State Farm, plaintiff retained public adjuster James Nevins to negotiate the claim. Nevins inspected the property and concluded the cause of the leak was not the roof tile decking, but clogged downspouts adjacent to the deck, which had overflowed and allowed water to back up into inadequately constructed scuppers and leak down into the house and wall interior. Nevins hired American Air Testing, Inc., to perform mold testing, which issued a report in October 2008 indicating "elevated levels of toxigenic molds" in the kitchen wall behind the cabinetry . He had commissioned the testing in the hopes of proving substantial water intrusion inside the wall, not because mold itself was a cause of concern. Though Nevins did not provide a complete copy of the mold report to State Farm, he mentioned the testing to Wong, who advised him mold would not be covered under the policy.[2] At the time of the

_____

[2] The policy contained a standard mold exclusion, although it provided coverage of up to $5,000 for mold damage that was caused by a covered loss. Wong took the position that because the water intrusion was caused by lack of maintenance and design defects, which were not covered losses, there was no coverage for any resulting mold damage. According to State Farm's counsel, the water damage other than mold was

2

conversation, Nevins was not contending mold itself was a form of damage that needed to be repaired or remediated.

Nevins's repair estimate totaled $319,450. It did not include an allowance for mold remediation, but called for extensive repairs in the family room and kitchen as well as complete replacement of the paneled library interior and hardwood floors. State Farm hired Britannia, a general contractor, to evaluate the claim, and Britannia prepared a repair estimate of $25,429, based on a much more limited scope of work. On December 15, 2008, Wong sent plaintiff a check for $8,684 (to cover the additional costs listed in Britannia's estimate) and again closed the file.

On February 17, 2009, plaintiff filed a civil complaint naming State Farm and Britannia as defendants. It alleged State Farm had breached the insurance contract by failing to pay the full amount of the loss and had breached the implied covenant of good faith and fair dealing by failing to fully investigate the claim. Britannia was alleged to have aided and abetted this conduct by State Farm.

A jury trial was initially set for June 1, 2010. On February 12, 2010, State Farm served a timely demand for an exchange of expert witnesses, including discoverable reports and writings made by each expert, to be completed by April 12, 2010. (Code Civ. Proc., §§ 2034.210 - 2034.240.)[3] On August 9, 2010 (after the trial date had been continued to Sept. 27, 2010), plaintiff served defendants with an expert witness designation that identified Michael Sterling as a licensed general contractor who would provide expert testimony as to the nature of the damage to plaintiff's home and the reasonable cost of repairing that damage. (§ 2034.210.) The designation included a declaration by plaintiff's counsel stating Sterling "will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific

covered under an ensuing loss provision of the policy, even though the defect and lack of maintenance themselves were not.

[3] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

testimony, including any opinions and the bases therefore, that he is expected to give at trial." Nevins was not identified as an expert.

State Farm noticed Sterling's deposition for August 23, 2010. Plaintiff's counsel sent an email to State Farm's counsel advising him Sterling's report would not be completed by August 23, and asking him to move the deposition to September 8, 2010. State Farm's counsel declined due to scheduling conflicts, the need to depose other witnesses in this case, and the upcoming trial date in this case.

Sterling appeared for his deposition on August 23, 2010. He testified he had inspected plaintiff's house and found previously undetected water damage in the library and in a crawl space under the library that had not been accessed during earlier inspections. Based on his observations, Sterling believed the walls of the family room and library had a significant amount of hidden water damage, including mold and other microbial contamination, though he did not believe it would be necessary to replace the entire library interior, as Nevins had suggested. Sterling had reviewed a preliminary mold air sampling report obtained by Nevins in 2008 and believed mold remediation under containment would also be required in the kitchen and downstairs bedroom. Sterling could not provide any estimate of the cost of repairs because he had not completed, and in some cases had not begun, his analysis of various components. He planned to perform additional inspections of the property and arrange for further mold testing, after which he would prepare a report on the necessary scope and cost of repairs. Sterling estimated his report would be completed sometime "between now and the time of trial[.]"

On September 7, 2010, State Farm asked for an opportunity to conduct another inspection of plaintiff's house in light of the newly claimed evidence of water damage. Plaintiff refused to permit the inspection. The trial date was continued to March 28, 2011, and a mandatory settlement conference was held March 11, 2011. In correspondence between counsel near the time of the settlement conference, State Farm indicated it would seek the exclusion of Sterling's testimony at trial, and plaintiff offered to make Sterling available for further deposition. State Farm declined, noting plaintiff

4

had refused to permit a further inspection of plaintiff's home following Sterling's disclosure of new water damage at his deposition. After this round of correspondence, Sterling prepared a report and repair estimate dated March 19, 2011, and plaintiff forwarded this report to State Farm the following day, a week before the then-scheduled trial date. The report estimated repair costs to be $386,864, a figure that included the complete replacement of the interior of the library (even though Sterling had opined at his deposition that less drastic repairs would suffice) and mold remediation. The report also indicated additional mold testing had been conducted in September and October 2010.

The trial date was ultimately continued to November 21, 2011. The parties submitted a number of motions in limine to the court, including one by State Farm (Motion in Limine No. 2) seeking to exclude Sterling's testimony and repair estimate on the ground it had not been timely provided and was "markedly different" from previous estimates. The motion noted Sterling had been deposed in August 2010, but had not at that time conducted the investigation necessary to prepare a repair estimate; that additional mold tests were conducted after the deposition, though the reports were never provided to State Farm; that Sterling's written report and estimate were not provided until March 20, 2011, on the eve of the trial date that was then scheduled; and that plaintiff had not referred to Sterling or his estimate at the March 2011 settlement conference, but had instead indicated that special damages were set forth in the repair estimate prepared by Nevins. Britannia joined in State Farm's motion.[4]

The trial court conducted a hearing under Evidence Code section 402, at which it considered documentary evidence, deposition transcripts, and the testimony of Wong, Nevins and Thomas Halpin of Britannia. The trial court ruled in favor of State Farm on its motion to exclude Sterling's testimony and, based on the lack of any expert testimony on the issue of the scope and cost of repairs, ordered the case dismissed. In its written statement of decision, the court explained:

---

[4] Because Britannia's liability, if any, was vicarious to State Farm's, we do not separately discuss the evidence as it pertains to that entity.

5

"[Plaintiff]'s failure of disclosure here was serious, even egregious, and a clear violation of the expert disclosure requirements of [] sections 2034.260 and 2034.270. Although Sterling's expert disclosure was supported by the required declaration of counsel verifying his full preparedness for deposition [record citation], Sterling instead appeared for the deposition without any new repair scope or cost estimate, or any meaningful information about what it would involve or amount to. Nothing was then heard from Sterling or [plaintiff]'s counsel for months, though it is now known that Sterling in that interim conducted extensive further air monitoring and mold testing at the house — all of it undisclosed to State Farm — while [plaintiff] refused to allow State Farm, Britannia, or any of their consultants access to re-inspect the house themselves. [¶] The Court finds that the Sterling repair estimate includes a major new mold claim, which was never presented to State Farm during the course of its extended claim investigation and adjustment, and which the Company accordingly never had any fair opportunity to investigate or adjust. In this regard, the Court finds particularly significant the deposition testimony of Nevins, in which he explained that none of his communications or interactions with State Farm or its claims representatives was intended to raise a claim or coverage issue regarding mold damage. [Record citation.] As noted above, Mr. Nevins was [plaintiff]'s <u>own</u> adjuster here. [¶] . . . . [¶] Under the circumstances, State Farm would suffer extreme prejudice if forced to defend itself at trial against liability for both coverage and bad faith based on a new repair cost estimate, including a major new mold coverage claim that it was never given any notice of prior to litigation — or indeed prior to the eve of trial and long past close of all discovery. . . . The Court is always reluctant to impose discovery sanctions in a trial context, recognizing the importance of trying claims and defenses on their merits. But fundamental fairness dictates that [plaintiff] here be foreclosed from proceeding at trial on the basis of the Sterling repair estimate."[5]

---

[5] The court alternatively excluded Sterling's testimony as more prejudicial than probative under Evidence Code section 352. Because we affirm the trial court's

The statement of decision explained that exclusion of Sterling's testimony required dismissal of the case: "The effect of this exclusionary ruling on [plaintiff]'s prima facie case against State Farm is, in practical terms, dispositive. Sterling is the only expert witness, retained or non-retained, disclosed by [plaintiff] to support his claimed repair scope and cost estimate for the allegedly covered but unpaid water damage. [Record citation.] [Plaintiff] did not disclose Nevins as an expert in this area, or as an expert for any other purpose. Moreover, [plaintiff]'s counsel made clear in pre-trial correspondence that Nevins was not to be considered as an expert witness for trial purposes. [Record citation.] There is no question that [plaintiff]'s claimed scope of repair and repair cost estimate must be supported by expert opinion from someone, given its technical nature. . . . [¶] For these reasons, [plaintiff] has insufficient remaining evidence to challenge State Farm's determination of coverage and thus cannot maintain a claim for breach of contract. In addition, and in the absence of coverage owed, [plaintiff] cannot maintain a claim of bad faith as a matter of law."

The trial court also noted the absence of other evidence suggesting a breach of contract by State Farm in advising plaintiff (through Nevins) that mold was not covered. It observed that both Nevins and State Farm had agreed the water damage was the product of a design defect and lack of maintenance, two excluded causes under the policy, which meant that "State Farm's determination of the scope of coverage for this claimed loss appears reasonable[.]" Despite this apparent lack of coverage for purposes of determining the reasonableness of State Farm's conduct, the court allowed plaintiff to pursue his mold claim: "The dismissal of State Farm is issued on condition that the Company re-open its claim file and consider the results of the mold testing as conducted by [plaintiff]'s experts and air monitoring consultants. Following this reconsideration, State Farm must determine what further investigation, if any, is needed regarding any continuing claim for mold damage and remediation, and State Farm must further adjust the claim as appropriate in light of its evaluation."

exclusion order as a discovery sanction, we need not address whether exclusion under section 352 was appropriate.

7

On July 27, 2012, the court entered judgment in favor of State Farm and Britannia, entitled "Judgment of Equitable Dismissal." The judgment dismissed plaintiff's complaint with prejudice, except with respect to the mold claim, which was dismissed without prejudice with directions that plaintiff "re-submit his mold claim to State Farm and fully cooperate in disclosing all information reasonably required by State Farm as necessary to a fair adjustment of that mold claim, including inspection of the premises involved as reasonably requested by State Farm. Defendant State Farm shall reopen its claim file, consider [plaintiff]'s mold claim, and make a fair determination of the claim as appropriate under the terms and conditions of [plaintiff]'s homeowner insurance policy. Said adjustment of the mold claim to be completed no later than December 31st, 2012." The court retained jurisdiction over this aspect of the judgment.

Plaintiff appeals, arguing the court erred in excluding Sterling's testimony and in dismissing the complaint with prejudice. Plaintiff also argues the trial court erroneously ruled that mold was not a covered loss under the insurance policy. State Farm filed a cross-appeal, which it dismissed before briefing.

DISCUSSION

The procedure for exchanging expert witness information during discovery is governed by section 2034.010 et seq. The purpose of these provisions "is to give fair notice of what an expert will say at trial." (*Bonds v. Roy* (1999) 20 Cal.4th 140, 146.) "This allows the parties to assess whether to take the expert's deposition [and] to fully explore the relevant subject area at any such deposition. . . ." (*Id*. at pp. 146-147.)

The expert witness exchange is triggered by a timely written demand made by any party after the initial trial date is set. (§ 2034.220.) Section 2034.260 sets forth the general requirements for the exchange and the information to be provided, which includes a list of the names and addresses of the experts (2034.260, subd. (b)(1)) and a declaration by the party's attorney setting forth the expert's qualifications (2034.260, subd. (c)(1)), the expected nature of the testimony (2034.260, subd. (c)(2)), and "[a] representation that the expert will be sufficiently familiar with the pending action to

8

submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that the expert is expected to give at trial" (2034.260, subd. (c)(4)).

A party demanding an expert witness exchange "may also include a demand for the mutual and simultaneous production for inspection and copying of all discoverable reports and writings, if any, made by any expert . . . in the course of preparing that expert's opinion." (§ 2034.210, subd. (c).) When a demand for documents is made, "all parties shall produce and exchange, at the place and on the date specified in the demand, all discoverable reports and writings, if any, made by any designated expert. . . ." (§ 2034.270.)

Failure to comply with these requirements can have drastic consequences. Section 2034.300 provides, "[O]n objection of any party who has made a complete and timely compliance with Section 2034.260 [concerning method and content of exchange], the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following: [¶] . . . [¶] . . . [¶] (c) Produce reports and writings of expert witnesses under Section 2034.270. [¶] (d) Make that expert available for a deposition. . . ." We review a trial court's exclusion of expert testimony under the deferential abuse of discretion standard. (*Tesoro del Valle Master Homeowners Assn. v. Griffin* (2011) 200 Cal.App.4th 619, 639; *Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950 (*Boston*).)

Here, plaintiff responded to State Farm's timely demand for an exchange of expert information by designating Sterling as a construction repair expert. Counsel submitted a declaration which, as required by statute, represented that Sterling would be sufficiently familiar with the case to submit to a meaningful deposition. (§ 2034.260, subd. (c)(4).) But when Sterling was deposed, he was still in the process of investigating the damage and had not yet prepared a repair estimate. Sterling went on to perform additional inspections and to secure two more mold tests after the deposition in the months that followed, but plaintiff never provided State Farm with corresponding mold reports, and Sterling did not even prepare his own report regarding the scope and cost of repairs until March 2011, some six months after the deposition. Plaintiff offered to make Sterling

9

available for a second deposition, but refused to allow State Farm to reinspect the property so it could prepare for that deposition.

Given this sequence of events, the court did not abuse its discretion in concluding plaintiff violated the disclosure requirements of sections 2034.060 and 2034.070, or in excluding Sterling's testimony under section 2034.300. Sterling was not prepared at his deposition to offer an opinion on the subject on which he was designated — the scope and cost of repair — even though counsel had declared under section 2034.060, subdivision (c)(4) that he was ready to submit to a meaningful deposition. (See *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 96-97 (*McCoy*); *Jones v. Moore* (2000) 80 Cal.App.4th 557, 564-565 [trial court may exclude opinions that go beyond those expressed by expert at the deposition].) And, while expert witnesses are not absolutely precluded from creating new or additional reports after the date specified for disclosure, "section 2034.300 empowers the court to exclude the expert opinion of any witness offered by a party who has *unreasonably* failed to produce expert reports and writings as required by section 2034.270. (§ 2034.300, subd. (c).) If the trial court concludes that a party intentionally manipulated the discovery process to ensure that expert reports and writings were not created until after the specified date, it may find the failure to produce the reports and writings was unreasonable and exclude the expert's opinions. Accordingly, a party who fails to instruct its expert to create all reports and writings before the specified date does so at its own risk." (*Boston*, *supra*, 170 Cal.App.4th at p. 952.)

Plaintiff argues there was no manipulation of the discovery process in this case, because the parties agreed Sterling would be deposed again, and it was State Farm's obligation to make the necessary arrangements. We disagree. After it became clear at the deposition that Sterling was unable to offer a meaningful opinion about the scope and cost of remediation, counsel for State Farm indicated he was not formally concluding the examination and would meet and confer with plaintiff's counsel regarding rescheduling. In the meantime, State Farm requested permission to inspect plaintiff's home again, based on Sterling's deposition testimony about previously undiscovered water damage

10

and mold, but this request was denied. In light of this denial, counsel for State Farm concluded it would be unproductive to depose Sterling a second time and elected not to do so.

The circumstances as a whole support the trial court's implicit conclusion plaintiff acted unreasonably in failing to promptly provide State Farm with the results of the mold testing performed in September and October 2010 and in allowing Sterling to wait until March 2011 to prepare his report and estimate, all while precluding State Farm from conducting an additional inspection of the property. No good reason was given for this delay, and pointing the finger at State Farm for failing to schedule a second deposition (when Sterling was unprepared for the first and did not even prepare a written estimate until six months later) is of no avail. "Any party shall be entitled as a matter of right to complete discovery proceedings pertaining to [an expert witness] on or before the 15th day, and to have motions concerning that discovery heard on or before the 10th day, before the date initially set for the trial of the action." (§ 2024.030; cf. *Stanchfield v. Hamer Toyota, Inc.* (1995) 37 Cal.App.4th 1495, 1503-1504 [no abuse of discretion in denying motion to exclude expert who indicated at deposition he needed 16 hours to prepare the opinions to be offered at trial, apparently because he needed time to review testimony of opposing expert deposed earlier that day; slight delay would not have compromised purpose of discovery statutes].)

Having concluded the trial court did not abuse its discretion in excluding Sterling's testimony, we consider whether it should have nonetheless allowed the case to proceed to trial. We find no error in the court's entry of the dismissal order, based on plaintiff's inability to prove the asserted causes of action in the absence of expert testimony.

Although case law has cautioned against using motions in limine to examine the sufficiency of the evidence or as a substitute for dispositive motions prescribed by the Code of Civil Procedure, trial courts do "have inherent power, separate from any statutory authority, to control the litigation before them and to adopt any suitable method of practice. . . ." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582,

11

1595.) When an order granting a motion in limine excludes evidence essential to a cause of action, we review the order de novo as we would the granting of a motion for nonsuit after opening statement, viewing the inferences and conflicts in the evidence most favorably to the nonmoving party. (See *ibid*.; *City of Livermore v. Baca* (2012) 205 Cal.App.4th 1460, 1465.)

Sterling's testimony was excluded as a discovery sanction, an order that was within the trial court's province and effectively left plaintiff without any expert witness who could testify about the necessary scope and cost of repairs to the house. "If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of lay[people], it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case." (*Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 702 [expert testimony required to establish negligence in constructing home and construction defects; homebuilding is "complicated activity" and laypersons do not possess the specialized knowledge necessary to determine whether structure was built with requisite skill and in accordance with industry standards].) Plaintiff does not dispute that expert testimony was required to establish the scope and cost of repairs. (See *ibid*.; *LeBrun v. Richards* (1930) 210 Cal. 308, 319-320 [homeowner could testify to value of the property, but not cost of repair, a proper subject of expert testimony]; *Smith v. Hill* (1965) 237 Cal.App.2d 374, 388-389 [estimated cost of repairs to equipment required expert testimony].)

Sterling was the only expert plaintiff designated on the scope and cost of repairs. His exclusion as a witness meant plaintiff would be unable to present any evidence regarding that issue. Without such evidence, plaintiff could not establish a prima facie case for breach of the insurance contract, because the breach was based on State Farm's alleged underpayment of the claim and underpayment could only be established if plaintiff presented evidence showing the damage caused by the covered loss would be more expensive to fix than the amount State Farm had already paid on the claim. Moreover, plaintiff could not establish the amount State Farm did pay was unreasonable and in bad faith. (*Benavides v. State Farm General Ins. Co.* (2006) 136 Cal.App.4th

12

1241, 1250 ["to establish an implied covenant tortious breach, an insured must show first, that benefits were due under the policy, and second, that the benefits were withheld without proper cause"].)

Plaintiff argues the trial court erroneously viewed the mold noted by Sterling as a new claim whose tardiness would prejudice State Farm, even though Nevins had advised Wong of the presence of mold in 2007 and Wong had informed him such damage was not covered. Plaintiff also argues the trial court erred in concluding mold losses were excluded under the policy. We conclude any error in this regard was harmless for two reasons.

First, the order excluding Sterling's testimony, which we have upheld, precluded plaintiff from proving the scope and cost of repairs, whether those repairs were related to mold remediation or some other type of damage. Dismissal of the complaint was appropriate because in the absence of expert testimony on this subject, plaintiff could not establish a prima facie case of breach of contract or bad faith, even if we assume some aspect of the mold claim was covered under the policy.

Second, regardless of the merits of the court's mold coverage analysis, which was made in the context of explaining why State Farm's position on that issue was not an independent basis for a bad faith claim, the judgment specifically allows plaintiff to pursue his mold claim against State Farm. Plaintiff argues this remedy is insufficient because the court's statement that the mold damage is not covered will operate as collateral estoppel in any future lawsuit. However, collateral estoppel applies only to issues that were "'*necessarily decided*'" in a previous proceeding. (*Henderson v. Newport-Mesa Unified School Dist.* (2013) 214 Cal.App.4th 478, 503.) Factual or legal conclusions unnecessary to the court's judgment have no collateral estoppel effect because they were not necessarily decided. (See *County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 879, fn. 7.) Because the policy's coverage of the mold claim was unnecessary to the court's conclusion that the exclusion of Sterling's testimony made it impossible for plaintiff to establish a prima facie case on his breach of

13

contract and bad faith claims, it will not have preclusive effect in subsequent proceedings.[6]

## DISPOSITION

The judgment is affirmed. Ordinary costs on appeal are awarded to respondents State Farm and Britannia.

_____

Needham, J.

We concur:

_____

Jones, P.J.

_____

Bruiniers, J.

---

[6] We express no opinion as to whether the alleged mold damage in this case would be covered under the State Farm policy, or whether defenses to such a claim exist. We merely conclude the trial court's coverage analysis should not be given collateral estoppel effect in future proceedings if such proceedings are brought.