[Civ. No. 31147.   Second Dist., Div. Three.   Apr. 11, 1968.]

ANNA KOLARIC et al., Plaintiffs and Appellants, v. ELAINE RAY KAUFMAN et al., Defendants and Respondents.

Calabro, Calabro & Calabro and Alfred A. Calabro for Plaintiffs and Appellants.

Veatch, Carlson, Dorsey & Quimby, Frederick C. Quimby and Henry F. Walker for Defendants and Respondents.

SHINN, J.*—The action is for personal injuries suffered by three plaintiffs in a collision of two automobiles. The car of defendants collided with plaintiffs' car in passing it, causing it to leave the roadway and travel onto adjoining property where it crashed into a telephone pole.

Plaintiffs are Michael Kolaric, his wife Anna and their minor son, Michael, Jr. The car in which plaintiffs were riding, a Studebaker, belonged to Michael, Anna was driving and the boy was being held by his father. The defendants are Elaine Kaufman, who was driving a Plymouth, and her mother Pauline Kaufman, owner of the car.

In a jury trial Michael, Jr., was awarded damages but his parents recovered nothing. The appeal is by the parents.

The general verdict implies findings of the jury that Elaine was guilty of negligence which was imputed to her mother, and that Anna was guilty of contributory negligence which was imputed to her husband.

We have reached the conclusion that the attorney for the defendants made statements in argument to the jury that were highly improper, that they were calculated to and probably did create in the minds of the jurors a strong feeling of prejudice against Anna, which prevented them from giving fair and impartial consideration to the question of her negli-

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

gence. Since the verdict against appellants rested upon the finding that Anna was negligent and that issue was not fairly tried and determined, the judgment must be reversed.

There was no dispute as to the manner in which the cars came into contact. The accident occurred on Kenneth Road in Glendale; the time was about 8 p.m., when there was still enough light for driving without lights. The cars were traveling westerly. Elaine had been following the Studebaker for several blocks. At the point of the collision Kenneth Road is 36 feet wide with double white lines along the center. From the point of the accident Kenneth Road rises slightly toward the west to a crest at a distance shown in photographs in evidence. The distance to the crest was not a material factor in the trial. When Elaine decided to pass the car ahead Anna was driving about a foot north of the center lines. There were no cars parked along the north curb and no cars were approaching eastbound. The two cars were traveling at about 25 miles per hour. Elaine speeded up, crossed the double line, turned back and the right rear of her car struck the left front of the Studebaker. Anna lost control of her car, it turned sharply to the right, left the roadway and ran into the telephone pole.

Anna was driving under a limited instruction permit. Elaine, 18 years old, had been licensed about two months. She had as a passenger a young man named DeShon, who was in the front seat.

Elaine and DeShon testified that they had been following the Studebaker for several blocks and that it was being driven erratically, slowing down and speeding up. DeShon described the occurrence as follows:

''Q. Will you describe for us as you best recall what happened during that maneuver. A. She turned into the left-hand lane and assumed a speed which at first was faster than the Studebaker, attempting to pass the automobile. I would say that the Studebaker was still driving in an erratic manner, that is, varying, the speeds were still varying, and as she attempted to resume the right-hand lane, Mrs. Kolaric's car did speed up somewhat and at that time Elaine's car contacted the Studebaker.'' Newman Porter, an Arizona attorney, had been driving behind the other cars for some distance; he said Elaine turned out to pass a car but he could not say whether the latter car increased its speed or changed direction. DeShon was not cross-examined to clear up the manifest uncertainties in his testimony. It left the jury to find answers

to vital questions; what did he mean by "somewhat"?; if Elaine's speed *at first* was faster than the Studebaker did she slow down, and when?; was it because Elaine slowed down that the Studebaker appeared to speed up? DeShon's testimony upon which the defendants were relying and which was adverse to the plaintiffs was permitted to remain vague, uninformative and subject to the jurors' speculation. Anna denied she had been speeding up and slowing down. Upon cross-examination it was brought out emphatically, under questioning by the court and counsel, that she did not speed up when she saw Elaine alongside. Her testimony on the point was the following:

"Q Now, Mrs. Kolaric, did your car in any way speed up from the time you first saw Miss Kaufman's car until the time the first impact occurred? A. I cannot say. Only what I remember. Like I told you before. When we was hitted, it was swerving, and I found myself besides pole. THE COURT: I don't think you understand the question, Mrs. Kolaric. Mr. Quimby is asking you if, between the time you first saw this car parallel to you, as you have described, and the time it came in contact with your automobile, whether in between those two times you ever speeded up. THE WITNESS: Excuse me. It was car parallel and between hitting the pole? THE COURT: No, no. Between the time that you saw it parallel next to you and hitting. THE WITNESS: No. No. It was just driving regular how I driving before. THE COURT: You may proceed, Mr. Quimby. MR. QUIMBY: Thank you, your Honor. Q So that your best recollection, Mrs. Kolaric, was that from the time that you first saw the Plymouth, that is, the other car, until the moment of this impact, that you did not speed up in any way? A. No. Q You are sure of that? A I am sure. Q All right."

Questioned by defendants' attorney whether she increased her speed because of the rise in the grade of the street Anna testified she did not. Michael did not know whether Anna speeded up as Elaine was passing. Elaine did not notice; she was looking to the road ahead. The court instructed that it would have been a violation of section 21753 of the Vehicle Code for Anna to speed up before Elaine had completed her passing. This was the critical question. The court also instructed, at defendants' request, in the language of section 21654 of the Vehicle Code.[1] The evidence was clearly suffi-

---

[1] "Notwithstanding the prima facie speed limits, any vehicle proceeding upon a highway at a speed less than the normal speed of traffic

cient to support a finding that Anna did not violate section 21753, and was not negligent in that particular and the jury could reasonably have concluded that she was not negligent in not driving closer to the right-hand curb. It was in this state of the record that the defendants' attorney made the following statements:

"After listening to counsel's argument yesterday and his statement that you are to award his clients something over $80,000 for these injuries and for this accident, I feel compelled this morning to raise my voice in the strongest possible protest toward this type of an approach to this case.

"It's been a long time in my legal practice since I've seen such evidence of sheer greed as in this particular case where these people come into court and tell you that they want something like that or any portion of that, for this particular accident under the facts that they have proved to you; and I will do my very best to try and show you from the evidence that this is a ridiculous, and it's an outrageous, type of claim.

"I feel it my duty, therefore, under the circumstances, to point out a few other facts to you that I might not have been compelled to talk about had the approach to this case been more reasonable and in line with the evidence.

"Mr. and Mrs. Kolaric are people who have come to this country not too long ago from Europe where, apparently, they were born and raised. They came here before their child was born. They came from an area which has been full of strife and full of disaster and war. They came to the country in which they now live.

"We have not heard whether they are citizens or not. Of course, that doesn't make any difference insofar as this court and this trial are concerned. But they have come to a country that has offered them its protection, its peace, its opportunities for advancement, its opportunities to bring up their child in a better society, an opportunity for a better way of life, under the circumstances.

"And what do we find these people have done in return for this? They have made a mockery of our judicial system and have abused doctors and hospitals.

"Now, we find that these people have changed attorneys not

moving in the same direction at such time shall be driven in the right-hand lane for traffic or as close as practicable to the right-hand edge or curb, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn. . . .''

once but twice before this trial, the last time which was about a week or two ago.

"We find that we have an accident which occurred three and a half years ago, and yet only now are we getting this case to trial; and this, apparently over the objections of Mrs. Kolaric.

"We find that this lady has not been in a hospital since October of 1963; and yet when this case came up for trial on the 1st of February, which was a Monday, which was about two, three weeks ago, two days before the trial of this accident, on the 30th of January, she threw herself in the hospital.

"And why? Her doctors admitted—and it's in the hospital records—certainly not for anything caused by this accident but because of extreme tension and nervousness and anxiety arising out of the approach of this trial. And she has the temerity to put the bill in evidence and claim that this is caused by the accident and ask you to award her damages on the basis of that against my clients.

"Presumably, if the case hadn't come to trial, we'd go on indefinitely avoiding the trial, going back in the hospital, increasing the medical expenses, and asking that those be paid as well.

"Is this your idea and sense of fair play and justice under the circumstances? It certainly is not mine."

It is not necessary to examine each statement separately to point out its prejudicial nature. They were cumulative and must be considered as a whole. It is noticeable, however, that the occasion for the indignation of the attorney which caused him to accuse the plaintiffs of being greedy was the estimate of their attorney in argument that his clients had been damaged to the extent of $80,000, which was in sharp contrast with the estimate of the defendants' attorney that they would amount to no more than $7,500. And it was plaintiffs' attorney, not Anna, who introduced into evidence a hospital bill for service rendered to Anna a few days before the trial date.

█ There was no basis in the evidence and no excuse for the representation that Mr. and Mrs. Kolaric were persons of bad character and dishonest, and that their claims for damages were fictitious and fraudulent. Michael and Anna were natives of Yugoslavia; they had left their homeland and gone to Germany and had come to the United States in 1957 to take up residence in Glendale. Michael had been a primary grade teacher in the old country. In Glendale he was employed as an

electrical technician. Anna had been employed in Yugoslavia as a draftswoman, a postal clerk and a bank clerk.

There is another matter which we believe sheds light upon the charge of unfairness of the trial. At the commencement of his cross-examination of Mrs. Kolaric the defendants' attorney questioned her as follows: "Q. Mrs. Kolaric, I want to ask you some questions. Be sure and tell me if you don't understand. Will you do that? A. Yes. Q. Have you ever been in a concentration camp? A. No. Q. That has never occurred, has it? A. No." (Note the repetition.) What an insidious question! What were the implications, and what was the purpose of the question? The jurors knew who the people were who were imprisoned in concentration camps during the war and the question would not have been asked except to suggest or imply that the Kolarics were members of the class subject to imprisonment. And it is significant that in the commencement of his argument the attorney brought into question the citizenship of the Kolarics and having brought up the subject piously reminded the jury that it had nothing to do with the case. We do not doubt that the purpose of the questioning and the argument was to gain unfair advantage by casting doubt upon the motives and credibility of Mrs. Kolaric.[1a]

It is a universal rule that the questioning or argument

---

[1a] On petition for rehearing defendants' attorney asked that the record on appeal be augmented by adding the opening statement of plaintiffs' attorney, made at the outset of the trial. This we have done. In the course of this statement plaintiffs' attorney said that as a part of plaintiffs' case a neurosurgeon "will testify that he has encountered in his practice this problem of persons refusing or not having the strength to go through with a test which requires the introduction of needles into your legs or arms or into your spinal column, and the reason for it is some of the adverse conditions that existed in concentration camps or in European cities during the last war." During the trial the neurosurgeon did testify on behalf of the plaintiffs that Mrs. Kolaric apparently feared needles and could not tolerate the discomfort of the tests involving them, that he believed her fear and anxiety were real but he did not know what caused them, and that such a fear of needles is more common in people who have immigrated to this country.

Defendants' attorney claims that the foregoing discrepancy between plaintiffs' attorney's opening statement and the evidence occasioned his questioning of Mrs. Kolaric as to whether she had ever been in a concentration camp. We do not accept this explanation. There was no discrepancy within the evidence itself and the jury was instructed, as requested by both counsel, that it "shall not consider as evidence any statement of counsel made during the trial . . . ." Plaintiffs' counsel had also told the jury at the start of his opening statement that "None of what I say is to be considered by you as evidence." Questioning Mrs. Kolaric whether she had been in a concentration camp was not cross-examination as to any matter to which she had testified on direct. It was but a part of the impropriety which, in our opinion, deprived appellants of a fair trial.

of counsel relative to the race, nationality or religion of a party, when irrelevant to the issues, is improper. The subject is exhaustively treated in 99 A.L.R.2d 1249. We need not elaborate upon it. (See *People* v. *Simon,* 80 Cal.App. 675 and cases cited at pp. 683-684 [252 P. 758].)

When the rule is violated the questions are whether the effect was prejudicial and whether the prejudice was or could have been removed by an admonition of the court. There was no objection to the question or the argument and no request that the jury be admonished to disregard them. The defendants argue that the failure to request that the jury be admonished is a sufficient answer to the charge of improper conduct. We do not agree. A request for an admonition would have emphasized the significance of the question and the argument. The implication of the question whether Mrs. Kolaric had been in a concentration camp was clear. If, as we believe to be probable, the improper conduct of the attorney created prejudice in the minds of the jurors we do not believe it could have been removed by an admonition that the jurors should not allow themselves to become prejudiced.

We have reached this conclusion from a consideration of the entire case and an application of the rules to a unique set of facts. Most significant is the fact that the jury found Mrs. Kolaric guilty of contributory negligence. It is probable that the jury disbelieved her testimony that she did not speed up her car and believed that she did speed up. It could have found that she was negligent in not driving closer to the right-hand curb, or that she, nevertheless, was acting as an ordinarily prudent person who desired to obey the law and, therefore, was not guilty of negligence. The question is not whether there was reason to find her to have been guilty of negligence but whether that question was fairly tried and determined. We believe it was not and that the judgment should not be permitted to stand.

Plaintiffs requested the following instruction:

"No. 103-C   The mere fact that some act or omission of a plaintiff may have contributed to his or her injury does not of itself bar recovery by him or her. A plaintiff is barred from recovery under the theory of contributory negligence only if some conduct of his or her own was negligent and was also a proximate cause of his or her injury.

"Have in mind also that the defense of contributory negligence is an affirmative defense, and if it has not been established by a preponderance of the evidence, your finding must be in plaintiffs' favor on that issue."

The court struck out the second paragraph and gave the instruction as modified. It was not error to strike out the second paragraph. It was stated in other instructions that a preponderance of the evidence was necessary to establish contributory negligence.

■ At the request of defendants the court also instructed as follows:

"No. 101-E The mere fact, if it is a fact, that it was impossible for a person to avoid an accident that he did not avoid, does not, of itself, justify a finding that he was negligent or contributorily negligent. If a person exercised ordinary care and did all that an ordinarily prudent person would have done in the circumstances to avoid an accident, (he) (or) (she) is not chargeable with negligence or contributory negligence."

This instruction sounds more like a proper argument to the jury on the evidence than the statement of a rule of law, but if it was argumentative it was as favorable to plaintiffs as to defendants. It was not error to give the instruction.

■ It is contended that it was error to instruct that the negligence of Anna, if any, was imputable to Michael. It is asserted in California the spouses have a community of interest in any recovery for personal injury;[2] that the negligence of one is imputable to the other, and it is argued that the rule is illogical and should be abrogated. Appellants overlook the fact that at the time of the accident the negligence of one who was operating a motor vehicle with the consent of the owner "shall be imputed to the owner for all purposes of civil damage," as then provided in section 17150[3] of the Vehicle Code. (*Zabunoff* v. *Walker*, 192 Cal.App.2d 8 [13 Cal.Rptr. 463].) It was in evidence that Michael owned the Studebaker.

We believe that it is reasonably probable the verdict would have been more favorable to appellants if the defendants' attorney had not conducted himself in the manner described.

The judgment is reversed.

Ford, P. J., and Cobey, J., concurred.

A petition for a rehearing was denied May 7, 1968, and the opinion was modified to read as printed above. Ford, P. J., was of the opinion that the petition should be granted.

---

[2] Such is not the law. (See Civ. Code, § 163.5.)

[3] Amended Stats. 1967, ch. 702, p. 1076.