Filed 4/21/22  Shaham v. Douglas CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| FARAHNAZ SHAHAM, | B303333 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC644468) |
| v. | |
| JUDITH DOUGLAS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cary H. Nishimoto, Judge.  Affirmed.

Law Office of Estivi Ruiz and Estivi Ruiz for Plaintiff and Appellant.

Richardson, Fair & Cohen and Manuel Dominguez for Defendant and Respondent.

# INTRODUCTION

Appellant Farahnaz Shaham brought this action against respondent Judith Douglas for injuries allegedly caused by Douglas's dog during an incident in August 2016. After the case proceeded to trial on theories of negligence and strict liability, the jury returned a defense verdict, finding, inter alia, that Douglas's dog did not cause Shaham injury. On appeal from the judgment entered on the verdict, Shaham contends: (1) the superior court (Judge Jon R. Takasugi) abused its discretion in denying her ex parte application to reopen discovery after the discovery cut-off date; (2) the trial court (Judge Cary H. Nishimoto) erred in excluding the proffered testimony of her expert and treating physician about his most recent, midtrial examination of Shaham, on the ground that the testimony exceeded the scope of his deposition testimony; (3) the court erred in failing to deliver strict liability instructions premised on Civil Code section 3342 and Beverly Hills Municipal Code section 5-2-111; (4) the court committed misconduct in various forms throughout the trial; (5) Douglas's counsel committed misconduct in closing arguments; and (6) Shaham was prejudiced by the cumulative effect of the asserted errors. We conclude Shaham has forfeited many of her contentions, and to the extent she has preserved others, she has failed to show any prejudicial error. Accordingly, we affirm.

2

## PROCEEDINGS BELOW

### A. Discovery

In December 2016, Shaham filed her complaint, containing causes of action against Douglas for negligence and strict liability; in support of the latter, Shaham alleged that Douglas's dog had an abnormally dangerous tendency. Trial was initially scheduled to begin June 20, 2018. Between the initial trial date and January 2019, the superior court (Judge Marc D. Gross) continued trial four times, at least twice at Shaham's request. At the time of the second continuance, the court ordered the discovery cut-off date to be calculated from the continued trial date. (See Code Civ. Proc., § 2024.020, subd. (a) [typically, discovery must be completed "on or before the 30th day . . . before the date initially set for the trial"].)[1] The record does not reflect whether the court similarly ordered an extension of the cut-off date when it continued trial for a third and fourth time. Assuming the court ordered the cut-off date to be calculated from the continued trial date of February 19, 2019, discovery closed in January 2019.

On the February 2019 trial date, the court (Judge Takasugi) continued trial for a fifth time, again at Shaham's request. Rather than set a new trial date, the court scheduled a "Trial Setting Conference" for April 10, 2019. The record does not reveal what, if anything, was discussed

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

3

regarding the discovery cut-off date. However, the minute order stated, "All discovery and motion cut-off dates are to be continued."

In March 2019, Shaham filed a notice of substitution of attorney, discharging her former attorneys and electing to represent herself. At the April 2019 trial-setting conference, the court granted Shaham's oral motion to continue the conference in order to allow her additional time to obtain new counsel.

On the continued conference date of July 1, 2019, the court scheduled trial to begin on October 16, 2019. The minute order states: "The Court and parties confer regarding the possible substitution of attorney Pedram Zivari on behalf of plaintiff and the setting of Final Status Conference and Trial dates. [¶] The Court and parties further confer regarding extending discovery and motion cutoff dates, which have been closed since January. The Court reviewed Trial binders at the Final Status Conference in February. Plaintiff fired her attorneys on the eve of Trial and the Court continued the matter for plaintiff to retain another attorney and address medical concerns.[2] In light of defendant's objection, the Court declines the plaintiff's request to reopen discovery. [¶] As a result, attorney Pedram Zivari informs the Court that he will not file a substitution of attorney on behalf of plaintiff. [¶] . . . [¶] Discovery and motion cut-off

---

[2] The record does not reveal the nature of Shaham's medical concerns mentioned in the minute order.

4

dates remain closed." On the October 2019 trial date, after Shaham had retained her trial counsel (J. Owen Murrin), the court deemed the parties ready for trial, and the case was transferred to the trial court (Judge Nishimoto).

### B. Trial Evidence

In this section, we summarize not only the evidence admitted at trial, but also the trial court's comments and evidentiary rulings that Shaham characterizes as judicial misconduct. We note that many of the court's other evidentiary rulings were in Shaham's favor; the court sustained numerous evidentiary objections made by Shaham's counsel, and overruled objections made by opposing counsel.

#### 1. The Parties' Dogs

At the time of the August 2016 incident, Shaham lived in Beverly Hills with her dog Tyson. Douglas lived nearby with her dog Truffle.

Truffle, a former racing greyhound, was seven years old and weighed 55 to 60 pounds at the time of the August 2016 incident during which he allegedly caused Shaham injury.[3] Over Shaham's counsel's objections, the court

---

[3] When Douglas's counsel asked Shaham whether she had weighed 135 pounds near the time of the August 2016 incident, Shaham's counsel interjected to request that Douglas's counsel identify the document to which he was referring. The court
*(Fn. is continued on the next page.)*

5

admitted into evidence several photos of Truffle, including a photo in which he was wearing a costume featuring green toy antlers. With respect to the costume photo, Shaham's counsel objected, "The horns [*sic*] are not natural to the dog, so I think it's defective and misleading." Implicitly overruling the objection, the court joked, "Well, maybe the dog grew those."[4]

Douglas testified that she had seen Shaham's dog, Tyson, unleashed in their neighborhood on several occasions, including once in a grassy area in front of Shaham's house, separated from the house by the sidewalk. When Shaham's counsel asked Douglas to confirm that the grassy area was Shaham's private property, the court sustained an objection, commenting that even a homeowner's property rights do not

---

explained that Douglas's counsel was "simply asking questions without referring to anything specific," and asked Shaham's counsel to sit down, commenting, "You apparently don't understand." Shaham's counsel renewed his request that the document be identified, stating he did not know what it was. The court commented, "[W]hen you announce ready for trial, you're supposed to know all this." Shaham's counsel did not object to the court's comments, which Shaham characterizes as misconduct on appeal, or request a curative instruction.

[4] When Shaham's counsel renewed his objection outside the presence of the jury, the court elaborated on its reasoning for overruling the objection, explaining that Douglas was entitled to present the evidence of her choice to rebut Shaham's allegation that Truffle had an abnormally dangerous tendency. Shaham's counsel raised no objection to the jocular manner in which the court had overruled the objection in the jury's presence.

extend to the middle of the street or the middle of the adjacent alley. After a recess, the court informed the jury that it wanted to correct an implication made by Shaham's counsel's in opening statements, when counsel "drew a diagram on the board and said that the defendant's dog ran down plaintiff's property through the alley [beside her house], and the incident occurred on plaintiff's property." The court informed the jury that the alley beside Shaham's house was public property. Shaham's counsel did not object.[5]

Douglas called animal control officer Carlos Alarcon, who authenticated records concerning Shaham's dog Tyson. During cross-examination, the court took its lunch recess. After the recess, outside the presence of the jury, Douglas's counsel and Alarcon informed the court that Alarcon had been confronted in the hallway by Shaham's mother (a witness for Shaham). The court and Shaham's counsel questioned Shaham's mother, who admitted approaching and speaking to Alarcon during the recess, but denied confronting him. After the jury was brought in, the court

---

[5] At the end of the next day, outside the presence of the jury, Shaham's counsel objected that the court "became an expert witness" when it "gave testimony" on the property issue. The court disagreed, stating that it was required by law to ensure counsel did not mislead the jury about the law, and repeating its understanding of the law. The court exited the courtroom while Shaham's counsel was attempting to continue the discussion. The next morning, the court asked Shaham's counsel whether he had anything he wanted to put on the record, but counsel did not revisit the property issue.

permitted Douglas's counsel to elicit Alarcon's testimony that Shaham's mother approached him in the hallway "talking about God and only God knows and to watch out," and that he walked away from her. Shaham's counsel did not object.[6]

### 2. The August 2016 Incident

Shaham testified that on August 18, 2016, she exited the back gate of her house, took several steps down the adjacent alley to the sidewalk, and then noticed her unleashed dog Tyson behind her. She grabbed Tyson by his collar. After hearing a noise, she looked up and saw Douglas's dog Truffle coming toward her, trailing a leash that had been dropped by Ivonn Gomez (Douglas's dogwalker). Gomez called out a warning to be careful, causing Shaham to believe Truffle was "going to do something" to her. Shaham considered whether she should run back through the nearby gate to her house, but decided to stand still, holding Tyson. As Truffle approached, Shaham began jumping to avoid him. Shaham acknowledged that Truffle did not bite or even touch her.

---

[6] At the end of the day, and again the next morning, Shaham's counsel asked the court to instruct the jury to disregard Alarcon's testimony about the confrontation, arguing the testimony was irrelevant. Implicitly rejecting the request, the court observed, "The credibility of witnesses is always an issue."

8

While jumping, Shaham soon felt a shooting pain in her left leg, after which she continued jumping on her right leg. She claimed it took three or four minutes for Gomez to reach her and take hold of Truffle's leash. Shaham informed Gomez that she was injured, and asked for Gomez's contact information. She later learned she had torn a muscle in her left calf, which she attributed to Truffle's "attacking" her. She testified that her calf injury had caused her a bunion and ongoing pain in her foot, knee, and hip.

Gomez testified that she inadvertently dropped Truffle's leash when she stepped out of Douglas's house to walk Truffle (along with another dog). She followed Truffle, but each time she attempted to take hold of his leash, he walked away. When she saw Shaham and her unleashed dog Tyson on the sidewalk, she called out, asking Shaham to hold Tyson. Shaham did so at first, but let go of Tyson and started jumping when Truffle approached Tyson. Both dogs sniffed each other, but were calm. Quickly following Truffle, Gomez reached Shaham in 10 to 20 seconds, and took up Truffle's leash. Shaham told Gomez that she was hurt and that Gomez would pay. After asking for Gomez's contact information, Shaham said she was going to call the police. Shaham told Gomez, "'This has never happened to me in all the years I've been here'" and "'I'm a citizen.'" Offended, Gomez informed Shaham she was also a citizen.

### 3. *Medical Evidence*
#### a. *P.T. Israel*

Physical therapist Brooke Israel was called by Douglas, out of order, before Shaham called any witness in her case-in-chief. Israel testified that she provided physical therapy to Shaham from August 2018 to January 2019. The physical therapy primarily treated an injury to Shaham's left calf, which Shaham reported had been caused by a dog attack, and secondarily treated residual injuries and pain in other areas of her body. Over the course of her physical therapy sessions, Shaham reported that her pain was improving, and ultimately reported that she no longer had any pain in her left calf. On cross-examination by Shaham's counsel, Israel testified that Shaham still had residual problems at the time of her last session, and that she believed Shaham had not been malingering.

#### b. *Dr. Collins*

Between June 2017 and July 2018 (before Shaham began receiving physical therapy from Israel), neurologist Robert Collins, M.D., conducted four examinations of Shaham for the purpose of treatment.[7] In response to a

---

[7]  Although Dr. Collins testified that he examined Shaham for the purpose of treatment, he also testified that Shaham's examinations took place in the office of her then-current attorney, that he had similarly examined about five of that attorney's other clients, and that he prepared certain reports only because he knew Shaham was involved in litigation.

demand from Douglas to exchange expert information, Shaham designated Dr. Collins as an expert witness. On January 10, 2019, Douglas took Dr. Collins's deposition. The record does not include the deposition transcript. On Friday, October 18, 2019, after the case had been transferred for trial, voir dire commenced but was not completed. Over the weekend, Dr. Collins examined Shaham again, without notice to Douglas. On Monday, October 21, voir dire was completed.

The next day, Shaham called Dr. Collins to testify. Dr. Collins testified about his four pre-deposition examinations of Shaham, during which he had diagnosed Shaham with, inter alia, a muscle tear in her left calf. After Dr. Collins testified about his final pre-deposition examination, Shaham's counsel asked Dr. Collins if he had examined Shaham more recently, and he responded that he had. Douglas's counsel objected, commenting, "That was the last visit that was taken, so it's *Kennemur*."[8] Shaham's counsel

---

[8] In *Kennemur v. State of California* (1982) 133 Cal.App.3d 907 (*Kennemur*), the Court of Appeal upheld the exclusion of certain expert testimony under the expert discovery statutes then in effect (later repealed and replaced in substantively similar form), in part because the testimony exceeded the scope of what the expert had testified to at his deposition. (See *id.* at 918-920; cf. *Dozier v. Shapiro* (2011) 199 Cal.App.4th 1509, 1523-1524 ["'The overarching principle in *Kennemur* . . . is clear: a party's expert may not offer testimony at trial that exceeds the scope of his deposition testimony *if* the opposing party has no notice or expectation that the expert will offer the new testimony, or *if*
*(Fn. is continued on the next page.)*

11

responded, "He's a treating physician. He saw her last Saturday at the facility." After confirming that the examination had not been addressed at Dr. Collins's deposition, the court sustained the objection, ruling that Dr. Collins could neither "express any opinion" based on the midtrial examination nor "discuss the facts" concerning it. Shaham's counsel made no offer of proof concerning Dr. Collins's excluded testimony.

Dr. Collins opined, on the basis of his pre-deposition examinations and MRIs he had viewed during his deposition, that the August 2016 incident caused Shaham's injuries, including the muscle tear in her left calf. He further opined that Shaham would continue to need medical care for her injuries, and that she was permanently disabled in a manner that would affect her work as a dental hygienist. On cross-examination, Dr. Collins acknowledged he had opined at his deposition that Shaham likely would not have injured herself during the August 2016 incident had her dog Tyson been leashed, as she would not have needed to stoop to hold the dog. Shaham introduced no medical records from Dr. Collins or her other doctors.[9]

---

notice of the new testimony comes at a time when deposing the expert is unreasonably difficult'"].)

[9] Shaham's attempts to introduce medical records during her direct examination were rejected on hearsay grounds. She does not assign error to this evidentiary ruling on appeal.

12

### c. Dr. Snibbe

Douglas's medical expert, orthopedic surgeon Jason Snibbe, M.D., testified that he had examined Shaham for purposes of the litigation in August 2018.  Dr. Snibbe agreed that Shaham had torn a muscle in her left calf, and testified that this injury was consistent with her report of twisting her body during the August 2016 incident.  However, he testified that the tear had healed by the time he examined Shaham, and opined that she would not need future treatment for her calf.

On cross-examination, Dr. Snibbe testified that he did not recall whether he took notes during his examination of Shaham.  He further testified that he had reviewed only the medical records provided by Douglas's counsel, without asking for more, and that he had not reviewed any records from Shaham's physical therapist or from one of her non-testifying doctors.  The court sustained objections to Shaham's counsel's argumentative and often repetitive questions to Dr. Snibbe regarding the notes he did not recall taking and the records he admittedly had not reviewed or requested.

After Douglas rested her case, the court asked if Shaham would call any rebuttal witness, and Shaham's counsel said he would like to confer briefly with his assistant. The court asked Shaham's counsel whether he was relying on his assistant for legal advice or allowing his assistant to "dictate what questions to ask and where to go with this case."  Shaham's counsel assured the court he was not, and

13

proceeded to call Shaham as a rebuttal witness. Shaham's counsel did not object to the court's questions or request a jury admonition.

### *C. Jury Instructions and Special Verdict Form*

Before trial, Shaham's counsel filed briefs arguing that Douglas could be held strictly liable for any injury caused by her dog under Beverly Hills Municipal Code section 5-2-111, along with proposed jury instructions quoting the ordinance. At trial, as requested, the court delivered instructions quoting the ordinance: "'Beverly Hills ordinance 5-2-111 states as follows: "A[ny] person owning, controlling, or having care or custody of any animal shall be liable for any injury caused by such animal. Any person owning, controlling, or having care or custody of any animals shall take reasonable and necessary precautions as required to protect all persons from physical harm from such animal."'"

Shaham's counsel proposed that the special verdict form, which the parties agreed should include questions about negligence and Douglas's dog's alleged dangerous tendency, should also reflect a strict liability theory based on the ordinance: "I would like a verdict [form] that says 'Is that animal owned by defendant' and 'Did that animal injure? If so, go on to the damage questions.'" Both parties' counsel reviewed the final special verdict form before it was submitted to the jury. The approved form reflected Shaham's counsel's proposed theory of strict liability: it asked whether Douglas owned, kept, or controlled a dog

14

(question three) and whether Douglas's dog caused injury to Shaham (question four); it directed the jury, if it answered "Yes" to question four, to proceed to the question requiring calculation of damages (question eight). The court instructed the jury to take care in following the directions on the verdict form, including directions regarding what to do after the jury returned an answer to a question (requiring the agreement of at least nine jurors).

Shaham's counsel also requested a jury instruction on Civil Code section 3342, which provides that a dog owner is liable for any damages suffered by any person who is "bitten by the dog." (Civ. Code, § 3342, subd. (a).) The court denied the request on the ground that Shaham was not bitten.

### D. Closing Arguments

Shaham's counsel argued that even according to Gomez's account of the August 2016 incident, Gomez was negligent in allowing Truffle to approach and scare Shaham, causing Shaham to twist her body and thereby sustain injuries (the jury was instructed that any negligence on Gomez's part was attributable to Douglas). Shaham's counsel further argued that the jury could find negligence per se based on a violation of, inter alia, Beverly Hills Municipal Code section 5-2-111. He further argued that Douglas was strictly liable for any injury caused by Truffle because, as a former racing greyhound, the dog had an abnormally dangerous tendency to run and leap. He asked the jury to award Shaham tens of thousands of dollars in

15

medical costs that had or would be incurred as a result of her injuries to her calf and other body parts; $800,000 in damages for pain and suffering; and over $1 million in lost earnings.

Douglas's counsel did not dispute that Shaham had injured her left calf, but argued that Douglas's dog had not been the cause of her injury which, in any case, had healed. At the outset of his argument, he used an image in explaining the burden of proof, and the court overruled an objection by Shaham's counsel. Shaham's counsel made no further objection before or during the following arguments, which Shaham now characterizes on appeal as misconduct.

Douglas's counsel argued Shaham was not credible in light of various behaviors she exhibited in the courtroom. As one of several examples, Douglas's counsel discussed her display of a prayer book during closing arguments, arguing Shaham was attempting to influence the jurors or make them think she was "holier than thou." He further argued that during opening statements, Shaham's counsel had similarly attempted to influence the jurors by commenting that Shaham was Jewish: "[I]t struck me as a blatant attempt to show that his client was something more than just a person, that she has a lot of faith and that she's Jewish. But he didn't know that my client [Douglas] was Jewish. So it kind of backfired on him using religion to come into a courtroom. Religion has nothing to do with our system here. [¶] . . . [B]ut she's using that to try and influence you."

16

Continuing to address Shaham's credibility, Douglas's counsel argued Shaham was biased because she was asking the jury to award her over one million dollars, which were her "million reasons" for bringing the action. Arguing that Shaham's behavior outside the courtroom was also relevant to her credibility, he argued: "She confronted Ms. Gomez about her citizenship by saying she was going to call the police. Who does that when this occurs? [¶] Why does citizenship even come up?"

Douglas's counsel observed that Shaham had failed to introduce into evidence any medical records or bills. He argued: "Even worse, she, through her attorney, has what we call[] subpoena powers . . . . None of her doctors were subpoenaed here other than Dr. Collins. Where are these doctors? Where is this proof that she suffered all of this injury for this accident?" Douglas's counsel quoted from and commented on CACI No. 205, as follows: "'If a party failed to explain or deny evidence against her when she could reasonably be expected to have done so based on what she knew, you may consider her failure to explain or . . . her failure to deny in evaluating the evidence.' [¶] So you can assume that if she failed to bring up any evidence that was against her and she didn't dispute it, that you can hold that against her." He proceeded to quote from and address CACI No. 203: "'You may as a jury consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you

17

may distrust the weaker evidence.' [¶] And that's Ms. Shaham's."

### E. Verdict

After a relatively short period of deliberations, the jury returned. By a 9-to-3 vote, the jury answered "No" to question one on the special verdict form, which asked whether Douglas was negligent. The jury unanimously answered "Yes" to question three, which asked whether Douglas owned, kept, or controlled a dog. In response to question four -- "Did Defendant's dog cause injury to Plaintiff Farahnaz Shaham?" -- 11 jurors answered "No," while one answered "Yes." Finally, the jury unanimously answered "No" to question five, which asked whether Douglas's dog had an unusually dangerous nature or tendency. Pursuant to the directions on the special verdict form, the jury answered no other questions. Shaham did not file a motion for new trial. She timely appealed the judgment entered on the verdict.

## DISCUSSION

### A. Denial of Application to Reopen Discovery

Shaham contends the superior court abused its discretion in denying her ex parte application to reopen discovery after the expiration of the discovery cut-off date. "Except as provided in Section 2024.050, a continuance or postponement of the trial date does not operate to reopen discovery proceedings." (§ 2024.020, subd. (b).) Section

18

2024.050 provides, "On motion of any party, the court may grant leave . . . to reopen discovery after a new trial date has been set. This motion shall be accompanied by a meet and confer declaration . . . ." (§ 2024.050, subd. (a).) "In exercising its discretion to grant or deny this motion, the court shall take into consideration any matter relevant to the leave requested, including, but not limited to, the following: [¶] (1) The necessity and the reasons for the discovery. [¶] (2) The diligence or lack of diligence of the party seeking the discovery . . . , and the reasons that the discovery was not completed . . . . [¶] (3) Any likelihood that permitting the discovery . . . will prevent the case from going to trial on the date set, or otherwise interfere with the trial calendar, or result in prejudice to any other party. [¶] (4) The length of time that has elapsed between any date previously set, and the date presently set, for the trial of the action." (§ 2024.050, subd. (b).)

Shaham has failed to show the superior court abused its discretion in denying her application to reopen discovery. The record does not reflect that Shaham submitted a meet-and-confer declaration as required by section 2024.050, subdivision (a). More important, the record does not show the court abused its discretion in considering the statutory factors. (See § 2024.050, subd. (b).) Over a year had elapsed between the initial trial date of June 20, 2018, and the October 16, 2019 trial date set by the court at the time it declined to reopen discovery. The court had already continued trial three times at Shaham's request, and had

19

also continued the trial-setting conference to accommodate her, primarily because she had "fired her attorneys on the eve of Trial." The court was understandably hesitant to delay trial even further, as likely would have been necessary had it reopened discovery. Moreover, Shaham's failure to complete the requested discovery despite the prior continuances suggested a lack of diligence. Finally, nothing in the record suggests that Shaham made any offer of proof in order to demonstrate her need for the requested discovery.

We reject Shaham's reliance on the apparent inconsistency between the February 2019 minute order's statement that the cut-off date was "to be continued," and the July 2019 minute order's statements that discovery had been closed since January and would remain closed. Nothing in the record reflects that Shaham raised this apparent inconsistency in the trial court. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court'"].) She therefore forfeited the issue on appeal. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2021) Ch. 8-D ¶ 8:265 ["Appellants are commonly held to an 'implied waiver' where the error urged on appeal was never asserted in the trial court. Appellate courts will not reverse for procedural defects or erroneous rulings that *could have been, but were not, challenged below.* [¶] . . . [¶] The same principle generally precludes appellants from asserting a *new theory* on appeal"].)

20

Even had Shaham shown an abuse of discretion, we would conclude she has failed to show prejudice. In her opening brief, she fails to identify any further discovery she would have conducted had discovery been reopened. In her reply brief, for the first time, she asserts -- without citation to the record -- that her requested discovery would have included depositions of Douglas, Gomez, and Dr. Stibbe. We need not consider this untimely and unsupported assertion. (See *Vines v. O'Reilly Auto Enterprises, LLC* (2022) 74 Cal.App.5th 174, 190 (*Vines*) ["'we need not address claims not properly addressed in the opening brief'"]; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 8-D ¶ 8:173 ["the parties' briefs cannot make arguments relying on facts outside the record . . . ; statements in the briefs based on improper matter are disregarded by the appellate court"].) In any event, Shaham does not argue these depositions would have enabled her to mount a more persuasive case; instead, she argues they would have spared her from comments by the trial court that her counsel was not entitled to conduct discovery during his examination of witnesses. On this record, we discern no possibility that those comments affected the outcome of the trial. In sum, Shaham has failed to show the superior court prejudicially erred in declining to reopen discovery.

### B. Exclusion of Testimony About Midtrial Examination

Shaham contends the trial court erred in excluding testimony from her treating physician, Dr. Collins, about his most recent, midtrial examination of Shaham, on the ground that it exceeded the scope of his deposition testimony.

### 1. Principles

Generally, on objection of any party who has made a complete and timely compliance with the expert exchange statute, the trial court "shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following: [¶] (a) List that witness as an expert . . . . [¶] (b) Submit an expert witness declaration. [¶] . . . [¶] (d) Make that expert available for a deposition under Article 3 (commencing with Section 2034.410)." (§ 2034.300.) "[N]o expert witness declaration is required for treating physicians to the extent that their opinion testimony is based on facts acquired independently of the litigation, that is, facts acquired in the course of the physician-patient relationship and any other facts independently acquired." (*Ochoa v. Dorado* (2014) 228 Cal.App.4th 120, 140.) However, even a treating physician must be listed as an expert and made available for deposition. (§ 2034.300; see also § 2034.260, subd. (b)(1) [expert list must identify any "person whose expert opinion that party expects to offer in evidence at the trial"]; § 2034.410 ["On receipt of an expert witness list from a party,

any other party may take the deposition of *any person* on the list" (italics added)].)  "When counsel is not notified when the opposing party's expert witness formulates *postdeposition* opinions to be offered at trial, the witness is 'in effect not made available for deposition as to the further opinions.'" (*Dozier v. Shapiro, supra*, 199 Cal.App.4th at 1519, italics added; see also *Jones v. Moore* (2000) 80 Cal.App.4th 557, 565 [plaintiff's expert witness was "in effect not made available for deposition as to the further opinions he offered at trial -- opinions which during deposition he assured defense counsel he did not have"].)  Thus, "a treating physician may not offer testimony at trial that exceeds the scope of his or her deposition testimony if the opposing party had no notice that the expert would offer new testimony in sufficient time to re-depose the expert."  (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) Ch. 8J-6 ¶ 8:1668b.)

Notwithstanding the foregoing exclusionary rule, a party may call even an undesignated expert witness "to impeach the testimony of an expert witness offered by any other party at the trial."  (§ 2034.310, subd. (b).)  "This impeachment may include testimony to the falsity or nonexistence of any fact used as the foundation for any opinion by any other party's expert witness, but may not include testimony that contradicts the opinion." (*Ibid.*)

## 2. Analysis

The trial court properly prohibited Dr. Collins from testifying to opinions based on his midtrial examination of Shaham because Shaham had unreasonably failed to make Dr. Collins available for deposition with respect to the excluded opinions.  (See § 2034.300, subd. (d); *Dozier v. Shapiro, supra,* 199 Cal.App.4th at 1519; *Jones v. Moore, supra,* 80 Cal.App.4th at 565.)  Without notice to Douglas, Shaham's counsel arranged for Dr. Collins to examine Shaham during trial and attempted to elicit testimony about the midtrial examination mere days later.  Thus, Shaham did not provide notice in sufficient time for Douglas to depose Dr. Collins with respect to his new opinions.

Shaham suggests Dr. Collins's proffered testimony was permissible impeachment of an opposing expert under Section 2034.310, because the testimony purportedly was offered to contradict opinion testimony from Douglas's medical witnesses -- Dr. Snibbe and physical therapist Israel -- regarding "a particular fact," viz., the extent of Shaham's injuries.  However, Dr. Collins testified before Dr. Snibbe; the former's testimony could not have been offered to impeach the latter's future testimony.  Although Dr. Collins testified after P.T. Israel, Shaham fails to identify any "fact used as the foundation for any opinion" by Israel, let alone any evidence in the record that Dr. Collins's proffered testimony would have addressed the "falsity or nonexistence" of such a foundational fact.  (§ 2034.310, subd. (b).)  Shaham has failed to show that the testimony fell within the bounds

24

of permissible impeachment under Section 2034.310, or that the court erred in prohibiting Dr. Collins from offering opinion testimony exceeding the scope of his deposition testimony.[10]

We acknowledge that the exclusionary rule set forth in section 2034.300 applies on its face only to expert opinion, and that the court prohibited Dr. Collins not only from expressing opinion based on the midtrial examination, but also from "discussing the facts" of the examination. But even assuming, arguendo, that this further prohibition was error, Shaham has not shown prejudice. (See *Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199, 220-221 [appellant asserting error in exclusion of evidence bears burden to show reasonable probability of more favorable result absent error].) In the trial court, Shaham made no offer of proof

---

[10] The cases on which Shaham relies are distinguishable. (See *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 780-781 [defendants were "explicitly notified" three months before trial that plaintiff's treating physician would express postdeposition opinion at trial, and had opportunity before trial to retake physician's deposition]; *Fatica v. Superior Court* (2002) 99 Cal.App.4th 350, 352-353 [trial court prohibited plaintiff's treating physician from testifying to opinions expressed *at* his deposition, as remedy for physician's inadequate preparation for deposition, and rejected reasonable alternative requested by plaintiff, viz., brief adjournment to allow further deposition]; *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 33 [trial court prohibited plaintiff's treating physicians from expressing *any* expert opinion, erroneously believing plaintiff had been required to submit expert declarations].)

concerning the additional facts Dr. Collins might permissibly have testified to.  On appeal, she asserts only that Dr. Collins's proffered testimony would have concerned the extent of her injuries.  But Dr. Collins was permitted to testify on that topic on the basis of his four pre-deposition examinations and his review of medical records; it is speculative whether his testimony would have gained any weight had he additionally relied on the bare facts of the midtrial examination.  In any event, the extent of Shaham's injuries proved irrelevant, as the jury concluded that Douglas's dog was not their cause.  In sum, the court properly excluded Dr. Collins's opinion testimony based on his midtrial examination of Shaham, and any error in excluding his non-opinion testimony concerning the examination was harmless.

### C. Asserted Instructional Errors

Shaham contends the trial court erred in failing to deliver strict liability instructions premised on Civil Code section 3342 (the dog-bite statute) and Beverly Hills Municipal Code section 5-2-111.  The dog-bite statute provides: "The owner of any dog is liable for the damages suffered by any person who is bitten by the dog . . . regardless of the former viciousness of the dog or the owner's knowledge of such viciousness."  (Civ. Code, § 3342, subd. (a).)  The statute codifies an exception to the common law rule of strict liability for injury caused by a dog, which requires that the dog have had an unusually vicious or

26

dangerous tendency that was known by the owner at the time of the injury. (See *Drake v. Dean* (1993) 15 Cal.App.4th 915, 921-922.) Notwithstanding the dog-bite statute, "the common law [dangerous-tendency] rule still obtains when a dog causes injury by some means other than biting." (*Johnson v. McMahan* (1998) 68 Cal.App.4th 173, 176; accord, 6 Witkin, Summary 11th Torts § 1573 (2021).) Beverly Hills Municipal Code section 5-2-111 provides, in relevant part: "Any person owning, controlling, or having care or custody of any animal shall be liable for any injury caused by such animal . . . ."

Shaham has failed to show instructional error. The court properly declined to instruct the jury on the dog-bite statute because Douglas's dog undisputedly did not bite Shaham. (See Civ. Code, § 3342, subd. (a); *Johnson v. McMahan, supra*, 68 Cal.App.4th at 176.) Contrary to Shaham's implication, the court *did* instruct the jury on Beverly Hills Municipal Code section 5-2-111. Moreover, the special verdict form submitted to the jury -- approved by Shaham's counsel -- reflected Shaham's proposed theory of strict liability based on the ordinance. As Shaham acknowledges on appeal, her counsel requested a verdict form reflecting this strict liability theory as follows: "I would like a verdict [form] that says 'Is that animal owned by defendant' and 'Did that animal injure? If so, go on to the damage questions.'" The approved verdict form did precisely what Shaham's counsel requested: it asked whether Douglas owned, kept, or controlled a dog (question three) and

27

whether Douglas's dog caused injury to Shaham (question four), and directed the jury, if it answered "Yes" to question four, to proceed to the question concerning damages (question eight). The court instructed the jury to take care in following the directions on the verdict form, including those regarding what to do after answering a question. Shaham does not attempt to explain how, in light of the verdict form, she was denied the benefit of the ordinance.

Instead, Shaham appears to suggest the verdict form should have omitted any question about causation. But the ordinance expressly limits liability to injury "caused by" the animal. Moreover, Shaham forfeited any such contention by failing to raise it in the trial court, where her counsel approved the verdict form and failed to request clarification or further deliberation when the jury announced its verdict. (See *People v. Johnson* (2015) 61 Cal.4th 734, 784 ["defendant has forfeited the issue of whether the technical error in the verdict form improperly biased the penalty verdict 'by failing to object to the form of the verdict when the court proposed to submit it or when the jury returned its finding'"]; *Mathews v. Happy Valley Conference Center, Inc.* (2019) 43 Cal.App.5th 236, 265 [by failing to raise issue in trial court, defendants forfeited contention that special verdict form was defective for applying single employer doctrine to breach of contract action].) In sum, Shaham has failed to show error in the court's instructions to the jury.

### D. Asserted Judicial Misconduct

Shaham contends the trial court engaged in misconduct throughout the trial, including by: (1) interrupting Shaham's counsel's cross-examination of animal control officer Alarcon in order to permit Douglas's counsel to elicit Alarcon's testimony that he had been confronted by Shaham's mother (a witness for Shaham) during a break in his testimony; (2) impugning Shaham's counsel's competence in the presence of the jury, by commenting on his understanding of trial procedures and asking whether he was relying on his assistant for legal advice regarding whether to call any rebuttal witness; (3) sustaining objections, including some raised on the court's own motion, to certain questions posed by Shaham's counsel in cross-examining Dr. Snibbe; (4) jocularly overruling Shaham's counsel's objection to the admission of a photo of Truffle wearing toy antlers; and (5) informing the jury that the alley beside Shaham's house was public, not private, property as Shaham's counsel had indicated in opening statements.[11]

Shaham forfeited many or all of her claims of judicial misconduct by failing to raise timely objections in the trial court. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1320 ["As a general rule, a specific and timely objection to judicial

---

[11]    In her reply brief, for the first time, Shaham makes additional claims of judicial misconduct. Shaham forfeited these claims by failing to raise them in her opening brief. (See *Vines, supra*, 74 Cal.App.5th at 190.)

misconduct is required to preserve the claim for appellate review"]; 7 Witkin, Cal. Proc. 6th Trial § 249 (2022) ["the claim of misconduct of the court must ordinarily be raised at the trial by objection, assignment as error, or motion for mistrial; otherwise it will be waived"].)  The sole objection on the ground of judicial misconduct raised by Shaham's counsel -- viz., his objection that the court improperly acted as an expert witness in informing the jury that the alley beside Shaham's home was public property -- was untimely, as it was not made until more than a day after the court made its comments.  Shaham's counsel did not move for a mistrial or otherwise accuse the court of misconduct.

By operation of statute, Shaham arguably preserved her claims that the court committed misconduct in sustaining objections to certain questions posed by her counsel in cross-examining Dr. Snibbe, overruling her counsel's objection to a photo of Truffle wearing toy antlers, and informing the jury that the alley beside her house was public property.  (See Code Civ. Proc., § 647 ["All of the following are deemed excepted to: . . . a ruling sustaining or overruling an objection to evidence; and any statement or other action of the court in commenting upon or in summarizing the evidence"]; *People v. Slaughter* (2002) 27 Cal.4th 1187, 1217 [assuming, without deciding, that in light of section 647, defendant preserved appellate challenge to trial court's comment on evidence, notwithstanding defendant's failure to object], abrogated on another ground by *People v. Diaz* (2015) 60 Cal.4th 1176.)  Assuming,

without deciding, that Shaham preserved these claims, we conclude she has failed to show error. We see no abuse of discretion in either: (1) the court's sustaining objections to Shaham's counsel's argumentative and often repetitive questions to Dr. Snibbe regarding notes he did not recall taking and records he admittedly had not reviewed or requested; or (2) the court's overruling Shaham's counsel's objection that a photo of Truffle wearing toy antlers was "defective and misleading" because the dog did not naturally have antlers. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 8-C ¶ 8:96.1 ["Generally, appellate courts apply the abuse of discretion standard of review to any trial court ruling on the admissibility of evidence"].) The mere fact that the court ruled against Shaham's counsel on several occasions does not suggest misconduct -- particularly in light of its many evidentiary rulings in Shaham's favor. (See 7 Witkin, Cal. Proc. 6th Trial § 252 (2021) ["Rulings against a party, even where numerous and continuous," do not suggest judicial misconduct].) With respect to the court's comments to the jury that the alley beside Shaham's house was public property, Shaham does not even attempt to show that the comments were erroneous as a matter of fact or law, much less that they were relevant to any issue before the jury. In sum, Shaham forfeited many or all of her claims of judicial misconduct, and to the extent she preserved any, she has failed to show error.

### E. Asserted Attorney Misconduct

Shaham contends Douglas's counsel committed misconduct in closing arguments, including by: (1) commenting on Shaham's religion in arguing that she and her counsel had attempted, through her counsel's opening statements and her display of a prayer book during closing arguments, to use her faith to influence the jury; (2) arguing that Shaham was not credible because she had brought this case in order to seek over one million dollars; (3) misrepresenting the evidence in asserting that Shaham had "confronted Ms. Gomez about her citizenship by saying she was going to call the police"; and (4) urging the jury to assume that certain medical evidence Shaham failed to produce, but which was equally available to Douglas, would have been adverse to Shaham. Shaham forfeited these claims by failing to object to the challenged arguments in the trial court.[12] (See Wegner et al., Cal. Practice Guide: Civil Trials & Evidence (The Rutter Group 2021) Ch. 13-C ¶ 13:229 ["Any objection to improper argument must be made promptly when the misconduct occurs. Otherwise, the objection is waived"].)

Contrary to Shaham's contention, the record does not show that objections would have been futile. At the time of

---

[12] In her reply brief, for the first time, Shaham makes additional claims of attorney misconduct. We conclude Shaham forfeited these claims by failing to raise them in her opening brief. (See *Vines*, *supra*, 74 Cal.App.5th at 190.)

the asserted misconduct, the court had sustained many evidentiary objections made by Shaham's counsel.  (See *People v. Fuiava* (2012) 53 Cal.4th 622, 680 [defendant forfeited claims of prosecutorial misconduct by failing to object in trial court, where "the record d[id] not establish that properly framed objections would have been in vain or provoked any 'wrath' on the part of the trial court; rather, all indications [we]re that the court was reasonably responsive to defense objections throughout the trial"].)  Nothing suggests the court would have failed to properly rule on meritorious objections, as it had done throughout trial. Further, the asserted misconduct was not so extreme as to establish the futility of objections and admonitions.  (See Wegner et al., Cal. Practice Guide: Civil Trials & Evidence, *supra*, Ch. 13-C  ¶ 13:231 ["Except in 'extreme' cases [citation], failure timely to object *waives* any objection to improper closing arguments"].)  Shaham cannot establish otherwise merely by identifying, for the first time on appeal, a number of alleged errors.  (See *People v. Fuiava, supra*, 53 Cal.4th at 727 ["The prevalence of asserted misconduct raised for the *first time on appeal* cannot establish that, had defense counsel made proper objections at trial, the trial court would have consistently overruled those objections, the prosecutor would have persisted in engaging in the asserted misconduct, or the jury would have been alienated by

33

defendant's bringing the prosecutor's asserted improprieties to the court's attention"].)[13]

Even had Shaham preserved her claims of attorney misconduct, we would conclude she has failed to show prejudice. (See Wegner et al., Cal. Practice Guide: Civil Trials & Evidence, *supra*, Ch. 13-C ¶ 13:255 ["Misconduct is prejudicial only when there is a 'miscarriage of justice' -- i.e., when 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error'"].) Emphasizing that only the minimum number of jurors (nine) agreed on the finding that

---

[13] The alleged misconduct of Douglas's counsel was not comparable to the extreme misconduct of the attorneys in the cases on which Shaham relies. (See *Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 351-359 [where "plaintiffs' counsel from the very beginning of the trial embarked on a campaign of hate, vilification and subterfuge for the sole purpose of prejudicing the jury," and defense counsel "objected to much of plaintiffs' counsel's actions and in some cases asked for admonitions," defense counsel's failure to make additional objections and requests for admonitions did not forfeit defendant's claim of misconduct on appeal]; *Kolaric v. Kaufman* (1968) 261 Cal.App.2d 20, 25-28 [prejudice from defense counsel's misconduct could not have been cured by admonition, where defense counsel observed that husband and wife plaintiffs had recently immigrated to U.S.; questioned whether they were U.S. citizens; argued they had made a mockery of U.S. judicial and medical systems in return for opportunities offered by U.S.; and implied they were Jewish by asking wife, who had lived in Germany, whether she had ever been in concentration camp].)

Douglas was not negligent, Shaham asserts it is "likely that the jury found Douglas was not negligent because they believed based upon [Douglas]'s counsel's argument that Shaham was less injured than she claimed . . . ." On the contrary, in light of the jury's 11-1 finding that Douglas's dog did not cause any injury to Shaham, any finding of negligence would have been irrelevant.[14] In short, Shaham has failed to establish a reasonable probability that the jury understood Douglas's counsel to be urging it to find Shaham's injury was nonexistent, or that she was otherwise prejudiced by the asserted misconduct.

As explained above, Shaham has forfeited many of her contentions, and to the extent she has preserved others, she has failed to show prejudicial error. For the same reasons, we reject her claim that she was prejudiced by the cumulative effect of the asserted errors.

---

[14] Equally unfounded is Shaham's suggestion that the asserted misconduct of Douglas's counsel "made the jury speculate Shaham's injuries were non-existent." Douglas did not dispute that Shaham had injured her calf.

## DISPOSITION

The judgment is affirmed.  Douglas is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, P. J.


We concur:


WILLHITE, J.


CURREY, J.